HRR:ljc \pleading\71252 MemoObjRemand

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RIVERFRONT LOFTS CONDOMINIUM ASSOCIATION :

VS. : C.A. NO. 07-395 ML-DLM

HARLEYSVILLE WORCESTER INSURANCE COMPANY and CAPITAL CITY INSURANCE AGENCY, LLC :

**DEFENDANT, HARLEYSVILLE WORCESTER INSURANCE COMPANY'S OBJECTION TO PLAINTIFF'S MOTION TO REMAND**

Now comes the defendant, Harleysville Worcester Insurance Company, and objects to plaintiff's motion to remand in the above captioned matter, and relies on the attached memorandum of law.

DEFENDANT, HARLEYSVILLE
WORCESTER INSURANCE
COMPANY,
By its Attorney,

/s/ Holly R. Rao, Esq.
Holly R. Rao, Esq. #3539
OLENN & PENZA, LLP
530 Greenwich Avenue
Warwick, RI 02886
PHONE: (401) 737-3700
FAX: (401) 737-5499

**CERTIFICATION**

I certify that I sent a true copy of the within on November 30, 2007, to:

Thomas J. Marks, Esq.
Decof & Decof, P.C.
One Smith Hill
Providence, RI 02903

Geoffrey W. Millsom, Esq.
ADLER, POLLACK & SHEEHAN
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

/s/ Holly R. Rao, Esq.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RIVERFRONT LOFTS CONDOMINIUM ASSOCIATION | : | |
| VS. | : | C.A. NO. 07-395 ML-DLM |
| HARLEYSVILLE WORCESTER INSURANCE COMPANY and CAPITAL CITY INSURANCE AGENCY, LLC | : | |

**DEFENDANT HARLEYSVILLE WORCESTER INSURANCE COMPANY'S MEMORANDUM IN OPPOSITION TO MOTION TO REMAND**

Now comes the defendant, Harleysville Worcester Insurance Company ("Harleysville"), a Write-Your-Own ("WYO") Program carrier participating in the United States government's National Flood Insurance Program ("NFIP"), pursuant to the National Flood Insurance Act of 1968 ("NFIA"), as amended,[1] appearing herein in its "fiduciary"[2] capacity, as the "fiscal agent" of the United States[3] and at the expense of the U.S. Treasury,[4] and files this opposition to plaintiff's motion to remand.

Within this memorandum, defendant will examine the plaintiff's complaint, and then establish the propriety of all three grounds for removal that were invoked in defendant's Notice of Removal. Those three grounds are: (1) 42 U.S.C. §4072 (the NFIP exclusive jurisdiction statute); (2) 28 U.S.C. §1331 (general federal question jurisdiction); and (3) 28 U.S.C. §1337 (the commerce clause

---

[1] 42 U.S.C. §4001, *et seq*.

[2] 44 C.F.R. §62.23(f).

[3] 42 U.S.C. §4071(a)(1); *Gowland v. Aetna Cas. & Surety Co*., 143 F.3d 951, 953 (5th Cir. 1998).

[4] *Moffett v. Computer Sciences Corp*., _____F.Supp.2d. _____2006 WL 3000121, *10-12.

removal statute). Defendant will then establish that the consent of the agent was unnecessary, given 28 U.S.C. §1441(c).

When analyzing the argument of the defendant, Harleysville, it is requested that the Court keep separate the plaintiff's claims against Harleysville from the plaintiff's claims against the independent agent, Capital City Insurance Agency, LLC ("Capital City"). This is a critical distinction for the purpose of NFIP removal analysis, for it is only defendant Harleysville that is the "functional equivalent" of FEMA,[5] given its status as the "fiscal agent" and "fiduciary" of the United States. *Gowland,* 143 F.3d 951 Cir. 1998); 42 U.S.C. §4071(a)(1) and 44 C.F.R. § 62.23(f). Insurance agents, unlike the insurance company WYO carriers, have not signed an Arrangement (44 C.F.R. Pt. 62, App. A) with the federal government, and are not acting as the enforcers of FEMA's rules, regulations, and operating systems. Any assertion that Harleysville's conduct falls outside of the Arrangement is incorrect in that claims against Harleysville in the instant matter implicate U.S. treasury funds and as such, removal was proper.[6]

## ARGUMENT

### I. PLAINTIFF'S WELL-PLEADED COMPLAINT

The plaintiff asserts that this case is simply a matter of policy procurement, and that all causes of action are based in negligence under state law. As such, the plaintiff argues that no federal question exists in the instant matter. This argument has no merit as to the WYO carrier. The Plaintiff seeks U.S treasury funds from the defendant, Harleysville. This alone states a federal question.

---

[5] *Van Hold v. Liberty Mutual Fire Ins. Co.,* 163 F.3d 161, 166 (3rd Cir. 1998).

[6] Notably, the claims against the plaintiff's agent involve separate and distinct causes of action, and any resulting judgment against the agent will be paid with private funds.

To wit, plaintiff states at paragraph 24 that "injustice can only be avoided by enforcing the defendants' promise that the $500,000 coverage was wholly adequate coverage." By demanding such, the plaintiff is asking this Court to interpret the policy and void the co-insurance requirement of Article VII(A)(1) of the SFIP. In further support of this argument, the plaintiff demands "the full amount of monetary damages" in its prayer for relief. The plaintiff is clearly asking this Court to award it U.S treasury funds in excess of what has been previously determined, payable under the policy by Harleysville. This demand is de facto one of policy interpretation and presents a federal question.

By virtue of the facts alleged, the plaintiff is asserting that Harleysville had an affirmative duty to evaluate plaintiff's policy to determine if plaintiff had purchased sufficient coverage. Harleysville's role is limited to policy administration, not procurement. However, the plaintiff is not asserting that there was a failure to procure a policy. The policy was clearly procured based on the limits the plaintiff requested. Harleysville has no involvement in the selection of policy limits. This is the domain of the insured and the insured's agent. Harleysville's responsibility is limited to issuing the policy based on the information provided. As such, as to Harleysville, plaintiff's allegations must be that once the policy was procured, it was not administered correctly by Harleysville in that Harleysville did not pro-actively evaluate the plaintiff's policy to determine if the coverage was sufficient to avoid the co-insurance penalty.

WYO carrier Harleysville asserts to this Court that Congress has mandated pursuant to 42 U.S.C. §4013, that all standards and duties concerning "the conditions of insurability" for the NFIP are to be set by federal regulation. Just as claims handling standards are set by federal regulation pursuant to on authority of §4019 of the Act, §4013 precludes a view that state law would supply any legal standard or applicable standard of care that would govern the activities of a WYO Program carrier while

administering this plaintiff's flood policy. As such, a federal question exists on this ground alone, and removal was proper.

## II. Federal Funds are at Risk

Federal law alone controls the resolution of plaintiff's dispute against Harleysville. Plaintiff is arguing that so-called "policy procurement" issues are based solely in state law negligence and may not be adjudicated in federal court. In support of this argument, plaintiff relies upon *Landry v. State Farm Fire & Cas. Co.,* 428 F.Supp.2d 531 (E.D.La. 2006), as well as the Fifth Circuit decision in *Spence v. Omaha Indemnity Ins.,* 996 F.2d 793 (5th Cir. 1993). The defendant would like to bring to this Court's attention the fact that *Spence* concerned a very narrow question, that of state law statutes of limitation, and any reliance on this decision is misguided. The Fifth Circuit in *Wright v. Allstate Ins. Co.* 415 F.3d 384 (5th Cir. 2005), clarified *Spence* as follows:

> A careful reading of *Spence*, however, reveals that *Spence* does not hold that state law tort claims are not preempted by the NFIA. The issue in *Spence* was a narrow one: whether federal or state law determined the statute of limitations for bringing state law claims against a WYO. While we held that state law would govern the statute of limitations for state law tort claims, we did not forclose the possibility of field or conflict preemption.

*Id.* at 389. Furthermore, *Spence* was decided in federal court; jurisdiction was not an issue in that decision.

Further, under 42 U.S.C. §4013, Congress provided the exact same federal and exclusive delegation of authority to the federal Executive Branch for the "conditions of insurability," as it provided with respect to claims handling. *Moffett,* at *1 (D.Md. Sept. 29, 2006). As per §4013, the federal regulations adopted by FEMA exclusively govern the question of what obligations are owed by

the WYO carriers such as Harleysville. In this regard, defendant respectfully requests that the Court examine the "Undertakings of the Company" section of the Arrangement. 44 C.F.R. Pt. 62, App. A, Art. II.

In *West v. Harris,* 573 F.2d 873 (5th Cir. 1978), the Fifth Circuit held, pursuant to §4019, that federal regulations governing claims handling preempted any state law upon the same topic. *Id*. at 880-81. There is no analytical difference between the situation at bar, which arises out of the "conditions of insurability" regulated by FEMA on authority of §4013. On both the policy administration side of the Program and the claims handling side, the federal government needs a nationally uniform rule litigated in the federal courts, or this program will not succeed.

On authority of §4013, FEMA promulgated all of the regulations concerning the administration of flood policies found throughout 44 C.F.R. Pt. 61. Pursuant to that same authority, FEMA adopted all those portions of the SFIP that relate to <u>policy issuance and administration</u>. For instance, please see SFIP Article II (44 C.F.R. Pt. 61, App. A(3)). There, in the "Definitions" article, is found the definition of both "Application" and "Declarations Page." Those two definitions make clear that the WYO carrier issues the policy based upon what has been applied for by "you or your agent" and based upon what premium has been paid. Article I of the SFIP also states that the policy is dependent upon whether the insured has "paid the correct premium." WYO carriers, as distinct from insurance agents, are charged with enforcing FEMA's rules and regulations based upon the company's "fiduciary" duties to the federal government. See 44 C.F.R. §62.23(f); *Oaks v. Allstate*, No. 7:05-cv-00191-REW (E.D.Ky. 11/14/06) (Exhibit E). While it might be true that an agent has legal duties vis-à-vis an insured in the selection of limits of coverage, <u>WYO carriers do not</u>. There is nothing in federal law that makes it the responsibility

of the WYO carrier to decide for the insured what limits will be applied for. However, and as was found in *Oaks*, the rating and issuance of flood policies is governed exclusively by federal law.

Harleysville now refers the Court's attention to the "Arrangement" that governs the relationship between the government and all WYO Program carriers such as Harleysville. 44 C.F.R. Pt. 62, App. A. In particular, Harleysville asks this Court to examine two paragraphs in Article I of the Arrangement that will be set forth below. Further, Harleysville asks that this Court notice that the provisions set forth below were added to the Arrangement by FEMA three years ago, after federal courts started remanding so-called "policy procurement" lawsuits involving the flood program to the state courts. Notably, the provisions set forth below are in the new Arrangement that took effect on October 1, 2004. Set forth below is the Arrangement that governs this case:

> Whereas, FIA has promulgated regulations and guidance implementing the Act and the Write-Your-Own Program whereby participating private insurance companies act in a fiduciary capacity **utilizing Federal funds to sell and administer** the Standard Flood Insurance Policies, and has extensively regulated the participating companies' activities when **selling or administering** the Standard Flood Insurance Policies; and
>
> Whereas, any litigation resulting from, related to, or arising from the company's compliance with the written standards, procedures, and guidance issued by FEMA or FIA arises under the Act, regulations, or FIA guidance, and legal issues thereunder **raise a federal question**; and . . . (emphasis added)

As of October 1, 2004, the "Arrangement" expressly declares (as a federal regulation) the government's view that <u>all NFIP</u> operations, and not just claim activities, fall within the scope of the duties of a WYO company that are owed *to the federal government*. These new paragraphs, which were added to Article I of the Arrangement under the heading "Findings, Purpose and Authority," serve to bolster the fact that the full scope of insurance-related operations of a WYO Program carrier falls within the scope of the Arrangement, and not just the subject of claims handling. In these regards, the Court is

asked to examine the Arrangement itself, and in particular, Article II(A)(1), Articles II(D)(2)(3) and (4), and Article II(G)(1), wherein FEMA expressly declares within the Arrangement as a federal regulation, that all matters of "policy administration," "policy issuance," and "policy marketing," do come within the scope of the Arrangement.

Critically, FEMA's view upon these questions has never changed. It has always had the opinion that liabilities arising against its fiscal agents (as distinct from insurance agents) for their alleged acts and omissions in the context of the "sale or marketing" of NFIP policies do fall within the scope of the Arrangement. *Moffett,* at *11. It is only the courts that have held a different view, and that different view was erroneously developed based upon a misreading of *West v. Harris*, 573 F.2d 873 (5th Cir. 1978), *cert. denied*, 440 U.S. 946 (1979) and *Spence* decisions. In support of this assertion, Harleysville attaches as Exhibit A the declaration that FEMA submitted in *Cohen v. State Farm Fire & Cas.*, 68 F.Supp.2d 1151 (C.D. Cal. 1999). In the declaration, and at Item 6, FEMA explained the meaning of the same provisions of the Arrangement upon which several prior court decisions incorrectly rely, and asserts that FEMA's view of the meaning of this language is as follows: "The FIA means by this that the WYO company is not liable and is not itself responsible for the payment of claims arising out of the delay, error, or omission in the sale or marketing of the Standard Flood Insurance Policy." Notably, an agency's interpretation of its own regulations, as distinct from its interpretation of statutes, is given "controlling weight."[7] (This same declaration was quoted and relied upon in *Moffett, supra*.)

[7] *See Stinson v. U.S.*, 508 U.S. 36 (1993).

The plaintiff has cited to the recent *Landry* decision in an effort to assert that Harleysville acted outside the scope of the Arrangement and that, as such, Harleysville's negligence will vitiate reimbursement by FEMA. In response, Harleysville raises these three points:

1. It is no longer appropriate to argue that FEMA is statutorily precluded from reimbursing its §4071(a)(1) fiscal agents for their own errors and omissions because of 42 U.S.C. §4081(c). The Fifth Circuit has recognized that that statute has no application whatsoever to insurance companies.[8] Notably, virtually all prior NFIP "policy procurement" remand orders are based on that erroneous view.

2. There is no allegation in this case that Harleysville failed to strictly construe and to enforce any of FEMA's rules, or that Harleysville violated any of FEMA's rules. In other words, from FEMA's perspective, it appears from the plaintiff's complaint that Harleysville has discharged its duty as the government's "fiduciary" exactly as FEMA has intended. 44 C.F.R. § 62.23(f). Nothing in the complaint asserts otherwise. As such, FEMA will reimburse Harleysville, and federal funds are at issue.

3. Apart from this Court's own review of the Arrangement, Harleysville would point out that FEMA's view (and its sole authority over this issue) of what falls outside the scope of the Arrangement, as set forth in the attached declaration from the *Cohen* matter, is clearly in opposition to the plaintiff's views. FEMA's view was recently addressed in *Moffett,* at *10-12. In that action, a group of 182 Maryland residents sued FEMA, various FEMA officials, various WYO insurance companies and several adjusting companies and adjusters, as well as several vendors. Plaintiffs'

---

[8] *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 388 (5th Cir. 2005).

complaint pursued both what was styled as policy procurement and claims handling allegations. The court issued a lengthy ruling explaining in great detail how one *properly* determines whether federal funds are at issue in a particular piece of NFIP litigation. Most significantly, the court held that the determination of whether federal funds are at risk is not in any sense to be decided based upon the use of buzz words in a plaintiffs' complaint. As just one of the court's several observations, is the following:

> The regulation leaves the definition of what is within and without the Arrangement to FEMA's General Counsel. If determination of what is "significantly outside the scope of the Arrangement" or agent negligence were left to the pleader, FEMA would ostensibly be obliged to decline to reimburse any activity that the pleader might assert in a Complaint was "significantly outside the scope of the Arrangement" or that arguably amounted to agent negligence. Every time an aggrieved insured might use these magic words, the WYO carrier would be left to twist in the wind. This would obviously not be in the best interest of the NFIP; WYO carriers might well leave the Program in droves. By bringing more types of WYO cases within the scope of the Arrangement and hence the preemptive fold, FEMA is able to provide important protections and incentives to WYOs. *Id.* at *11.

Furthermore, recent rulings from the Eastern District of Louisiana, where the majority of flood litigation in the nation is transpiring, have shown that when a plaintiff asserts that a WYO carrier did not procure a sufficient amount of flood insurance (in these cases an amount comparable to their homeowner's coverage), a federal question is presented. To wit, the court in *Nevil v. Fidelity National Insurance Co.* No. 06-7437 (E.D. La. 5/30/2007) and *Hughes v. Allstate Insurance Co.* No. 06-8885 (E.D. La. 3/8/2007), attached herein as Exhibits B and C, in identical rulings denying remand, stated:

> Plaintiffs bring this action seeking damages for, *inter alia,* the negligence of their flood insurer Fidelity in failing to provide coverage that complimented their homeowner's policy. A claim of negligence

> against a WYO involves the NFIP, and thus, falls within the Court's exclusive subject matter jurisdiction as granted by 42 U.S.C. §4072…the Court finds that Plaintiffs' motion is without merit.

Based on all of the authorities and analysis set forth above, Harleysville asserts that a federal question is presented and jurisdiction is proper.

## III. Rules and Regulations Regarding Agency Relationships in the NFIP

Another basis for federal jurisdiction exists in the instant case, the agency relationship between WYO carriers and the NFIP. This relationship clearly establishes that all activities of the agent fall within the purview of state law, and all activities of the WYO are governed by federal law. Defendant Harleysville is not in any sense asserting to this Court that NFIP participants cannot sue their own insurance agents when negligence occurs in the selection of limits. However, Harleysville is asserting that its role in this situation is not to make the choice for insureds as to what limits they want to select. That is a decision made by the insureds working with their own agent. Please see the definition of "Applications" found at 44 C.F.R. Pt. 61 App. A(1). Simply put, Harleysville is not this insured's agent or their "fiduciary." Harleysville is the government's fiduciary and fiscal agent. 42 U.S.C. §4071(a)(1) and 44 C.F.R. § 62.23(f). Under Harleysville's Arrangement with the government, it is to issue and administer federal flood policies pursuant to FEMA's rules, not select coverage limits for insureds. 44 C.F.R. Pt. 62 App. A, Art. II(D).

The key to this Court understanding why the Federal Government is so adamant that its fiscal agents be distinguished from typical insurance agents, is understanding the absolute line of demarcation that FEMA has established between the legal duties of WYO companies that are established exclusively by federal law, and the wholly separate legal duties of insurance agents that

are decided on a state-by-state basis under the relevant laws of the state where the agent is located. In this regard, it must be understood both that FEMA pervasively regulates its companies, and also that it scarcely regulates agents at all. Regulating agents is up to the states. Because of the great importance of this question to the continued success of the NFIP, and given the conflict between what federal law says about this topic and what the Plaintiff is claiming in the Complaint, the Court is asked to examine this issue in more detail as set forth as follows:

First, and as was held in *Gowland*, 143 F.3d 951 at 953, WYO Program insurance carriers such as Harleysville are, "by statute," the fiscal agent of the United States. FEMA's regulations repeat this same point. Please see 44 C.F.R. § 62.23(f), which reads in pertinent part as follows:

> To facilitate the marketing of flood insurance coverage under the Program to policyholders of WYO companies, the Administrator will enter into Arrangements with such companies whereby the federal government will be a guarantor in which the primary relationship between the WYO company and the federal government will be one of a fiduciary nature, i.e., to assure that any taxpayer funds are accounted for and appropriately expended.

Please contrast 42 U.S.C. §4071(a)(1) and 44 C.F.R. § 62.23(f) with what FEMA provides with respect to insurance agents. In this regard, 44 C.F.R. § 61.5(e) states this:

> The standard flood insurance policy is authorized only under terms and conditions established by Federal statute, the program's regulations, the Administrator's interpretations and the express terms of the policy itself. Accordingly, representations regarding the extent and scope of coverage which are not consistent with the National Flood Insurance Act of 1968 as amended, or the Program's regulations, are void, and the duly licensed property or casualty agent acts for the insured and does not act as agent for the Federal Government, the Federal Emergency Management Agency, or the Servicing Agent.

On this exact topic, the U.S. District Court for the Eastern District of Texas recently recognized that in the specific context of the NFIP, federal law establishes that insurance agents act for the insured, and not for the WYO carrier:

> FN1. The court notes that, under the NFIP, "the duly licensed property or casualty agent acts for the insured," not the "Write-Your-Own" ("WYO") insurance carrier authorized to issue SFIPs under the NFIP.

44 C.F.R. § 61.5(e) (2005) and *Hanak v. Talon Ins. Agency*, (E.D. Tex. 10/13/06) No. 1:05-cv-00777-MAC (Exhibit D).

The great importance of judicial enforcement of this separation between companies and agents is revealed by *Oaks, supra.* In *Oaks*, an insufficient premium was collected at the initial issuance of the flood policy because of a mistake concerning the actual characteristics of the home to be insured, though it was unclear as to whether the mistake was made by the insured or by the insured's agent. In the resulting lawsuit, much like the instant case, the plaintiff argued that both the insurance agent and the WYO company should be "penalized" for "their" mistake in mis-rating the policy. The court disagreed for multiple reasons, among them the following:

> Similarly, the power to revise home ratings does not depend on whether Defendants were at fault for the errors in the original home rating. Plaintiff suggests that it is particularly appropriate to "penalize" Defendants for any mistakes in generating the initial home rating. Regardless as to whether Defendants were at fault, Plaintiff's argument finds no support in the text of the SFIP. Imposing any qualification on the Defendant's right to revise the home rating would be inconsistent with the NFIP, which authorizes coverage only as provided by statute, regulation, or the terms of the policy. See 44 C.F.R. Pt. 61.5(e). Defendants properly revised Plaintiff home rating, in accordance with the proof, before honoring his claim (Exhibit E, pp. 15-16).

In addition, the NFIA provides for a clear difference between the statutory ability of FEMA to reimburse WYO Program companies (who work for FEMA) as opposed to insurance agents (who

work for the insureds) for errors and omissions. Please compare 42 U.S.C. §4081(a) (which was enacted in 1968) and §4081(c) (which was enacted in 1981). It has been recognized in the courts that the WYO Program is statutorily authorized by §4081(a), which regards the WYO companies.[9] The much later-enacted §4081(c) provides a hold harmless agreement for insurance agents, but that hold harmless agreement excludes errors caused by the agents, rather than by FEMA. For purposes of the current jurisdictional argument, this Court is simply asked to notice that FEMA's reimbursement authority vis-a-vis the WYO companies in §4081(a) is unrestricted, while its authority vis-a-vis agents is restricted. Furthermore, §4081(c) was held by the *Wright* court as not applicable to WYO companies and no grounds for remand can be based on such. In this case, there is no dispute that Harleysville is an insurance company.

FEMA had made it crystal clear that 44 C.F.R. § 61.5(e) applies with full force to the WYO Program in the declaration FEMA submitted in *Cohen, supra.* (Exhibit A). In FEMA's *Cohen* declaration, it made three points that are of particular importance to the current issue:

A. Agent liability for agent error should be covered by an agent's E&O insurance policy.

B. Under FEMA's regulations, the agent acts for the insured, not for FEMA, or "by implication" the Write-Your-Own Program company.

C. The agent has not signed an Arrangement with FEMA, while the WYO carrier has (Exhibit A).

Next, the SFIP also makes clear that agents and companies have separate roles in the NFIP. Please examine the definition of "Application" (SFIP Art. II), which states:

---

[9] See *Van Holt*, *supra*, at 165 ("In 1983, pursuant to the regulatory authority granted by Congress in 42 U.S.C. §4081(a), FEMA created the "Write-Your-Own" ("WYO") Program").

> Application means the statement made and signed by you or **your agent**, in applying for this policy. The application gives information we use to determine the eligibility of the risk, the kind of policy to be issued, and the correct premium payment. The application is part of this flood insurance policy, the correct premium payment must accompany the application (emphasis added).[10]

Under the applicable federal laws, agents act for the insured, while the companies act as the fiscal agent of FEMA. Under this system, each party in the Program, that being the insured/citizen and the U.S. Government, is provided an insurance professional to care for their interests.

For the above reasons, it is clear that the actions of the agent, Capital City, and the WYO carrier, Harleysville, are exclusive of each other. Furthermore, the actions of Capital City in no way can be attributed to Harleysville. As such, removal was proper and the plaintiff's motion to remand should be denied.

## IV. THREE DISTINCT GROUNDS SUPPORT REMOVAL

Upon all of these showings and explanations made thus far, Harleysville believes that this Court would properly take subject matter jurisdiction over this case for three distinct reasons:

1. 42 U.S.C. §4072: Harleysville respectfully asks this Honorable Court to give due consideration to the Eastern District's recent ruling in *Newman v. Allstate,* 2006 WL 2632116 (E.D.La. Sept. 12, 2006). In *Newman,* the court agreed with the growing number of federal judges who see a clear distinction between true policy procurement cases, which principally are directed at what an insurance agent does to induce a person to purchase a policy, and a separate category of cases labeled policy administration cases, which concern the steps taken by a WYO carrier in both issuing,

[10] 44 C.F.R. Pt. 61, App. A(3) Art. II - Definitions.

and then administering an existing NFIP policy. See also *Southpointe Villas Homeowners Assoc. v. Scottish Ins. Agency Inc.*, 213 F.Supp.2d 586 (D.S.C. 2002). In the matter at bar, plaintiff went beyond just suing his own insurance agent for what was done in selecting the limits. He has also sued Harleysville, and asserted that its activities pursuant to the regulations adopted pursuant to 42 U.S.C. §4013, should be challenged and potentially altered in a state court forum, and pursuant to state law. Under the analysis of Judge Feldman's *Newman* decision, the claims of this plaintiff against Harleysville should be restricted to the federal courts under §4072.

2. 28 U.S.C. §1331: The question of what duties are owed by WYO Program carriers while administering NFIP policies is a significant federal question and a significant federal interest. The Court is asked to ponder what would happen to the NFIP if 50 different sets of state courthouses were allowed to answer all questions arising out of all activities governed by 42 U.S.C. § 4013.

The core question raised by plaintiff's complaint against Harleysville is the question of whether federal fiscal agents, such as Harleysville, have an affirmative legal obligation to pro-actively evaluate policies and inform all persons who purchase federally backed flood insurance policies of potential penalties for choosing insufficient levels of coverage. To determine the answer to this question, the Court would have to look at the structure and purpose of the National Flood Insurance Act and in particular, at 42 U.S.C. §4013. The Court would then also have to examine all of the regulations relating to policy issuance and administration found at 44 C.F.R. Pt. 61, as well as the regulations governing the WYO carriers found at 44 C.F.R. § 62.23 and Pt.62, App. A. Finally, the Court would need to evaluate the import of the Supreme Court's decisions in *Federal Crop Ins. Corp. v. Merrill*, 68 S.Ct. 1 (1947), as well as *Heckler*, *supra*, concerning whether NFIP participants, such as the plaintiff at bar, can properly claim ignorance of the scope of coverage afforded by NFIP

policies. Irrefutably, the questions posed by the plaintiff's complaint go to the heart of how one properly operates a *federal insurance program*. However, in no sense would any aspect of these questions be resolved by looking to anything emanating from just one state. As the questions raised by the claims Plaintiff chose to make against Harleysville, as the master of its claims, are *only* federal questions, defendant maintains that this Court has federal question jurisdiction.

3. 28 U.S.C. §1337: Removal of this case is also proper under 28 U.S.C. §1337, which provides that the district courts shall have original jurisdiction of any civil action or proceeding arising under any act of Congress regulating commerce, just like §1442, §1337 is not subject to the well-pleaded-complaint rule. Under §1337, removal is proper where the facts alleged in the plaintiff's complaint bring into play an act of Congress that regulates commerce, regardless of whether any reference to the said act appears in the plaintiff's pleading. *Uncle Ben's International Division of Uncle Ben's Inc. v. Hapag-Lloyd Aktiengesellschaft*, 855 F.2d 215, 216-17 (5th Cir. 1988); *Crispin Co., v. Lykes Bros. Steamship Co.*, 134 F.Supp.704, 706 (S.D.Tex. 1955); and *Commonwealth of Puerto Rico v. Sea-Land Service Inc.*, 349 F.Supp.964, 973-74 (D.P.R. 1970).

Clearly, under the National Flood Insurance Act, 42 U.S.C. §4001, *et seq.*, Congress is regulating commerce by promulgating the complex and comprehensive statutory scheme that is commonly described as the National Flood Insurance Act. As recognized in *C.E.R. 1988, Inc. v. Aetna Cas. and Sur. Co.*, 386 F.3d 263, FN3 (3rd Cir. 2004):

> FN3. The insurance industry in the United States operates in interstate commerce. States may regulate the insurance industry only to the extent Congress permits. U.S. Const. art. I, § 8, cl. 3. The McCarren-Ferguson Act, 15 U.S.C. § 1011, *et seq.*, grants states this power except where Congress enacts legislation that "specifically relates to the business of insurance." 15 U.S.C. §1012 (b). In *Barnett Bank of Marion County v. Nelson*, 517 U.S. 25, 116 S.Ct 1103, 134 L.Ed.2d

> 237 (1996), the Supreme Court held that the exception for acts relating to the business of insurance should be construed broadly, noting that "[t]he word 'relates' is highly general." *Id.* at 38, 116 S.Ct. 1103. Without doubt the NFIA is congressionally-enacted legislation relating to the business of insurance.

Beyond the general proposition that the National Flood Insurance Act regulates commerce, it is also clear that in a more particularized sense, the Act expressly regulates "the conditions of insurability." See, e.g., 42 U.S.C. §§4013 and 4019. *Moffett, supra*. Plainly, federal laws affecting commerce are involved in the facts put at issue in the plaintiff's complaint, and so removal of that complaint is proper pursuant to 28 U.S.C. §1337.

## V. CONSENT OF THE AGENT IS NOT REQUIRED FOR REMOVAL

Defendant asserts that under 28 U.S.C. §1441(c), removal is proper. Plaintiff does not dispute that Harleysville is indeed a WYO Program carrier, or that as per *Gowland*, 143 F.3d 951, Harleysville operates as the fiscal agent of the United States in the context of the NFIP. Nevertheless, plaintiff contends that a WYO carrier such as Harleysville must obtain the consent of the plaintiff's own insurance agent before removing a case of this type. Harleysville asks this Court to consider this practice in the light of its impact upon FEMA's ability to have its cases concerning NFIP disputes resolved in the federal courts. The question presented is this: is the right to remove such cases subject to the consent of the plaintiff's own agent?

Pursuant to the analytical path employed by the court in *Benoit v. Granger*, 1998 WL 749444 (E.D.La. Oct. 21, 1998), Harleysville disagrees.

Prior to addressing *Benoit*, Harleysville points out the key distinction between the claims against the WYO carrier verus the agent:

- The claims against the WYO carrier involve interpretation of federal law.
- The claims against the agent are premised on state law.
- Any judgment against the WYO carrier will be paid directly with U.S. treasury funds.
- Any judgment against the agent will implicate only private funds.

In *Benoit*, the court analyzed this situation in that matter against the Fifth Circuit's decisions in *Eastus v. Bluebell Creameries*, 97 F.3d 100 (5th Cir. 1996), *Carl Heck Engineers, Inc. v. Lafouche Parish Police Jury*, 622 F.2d 133 (5th Cir. 1980), and *Henry v. Independent American Savings Association*, 857 F.2d 995 (5th Cir. 1998). The court described the applicable test from the three cases as follows: Under *Eastus*, the plaintiff's allegations must "involve different facts for each defendant." Under the *Carl Heck* test, "a claim is separate and independent if the claim would be removable if sued upon alone." Under *Henry*, "a claim against one defendant is separate and independent if it is a claim for which only the removing defendant itself may be liable."

Harleysville submits that the events that would take place at the agent's office in the initial procuring of the policy have no connection to events occurring at Harleysville once the policy is procured. Plaintiff is, in effect, alleging that Harleysville should have known that plaintiff had purchased insufficient coverage and should have taken some kind of unilateral action to rectify the situation. Plaintiff's claim against Harleysville is in reality one under policy administration, not procurement. Harleysville fulfilled its obligation under the SFIP, and the policy was put into place with limits selected by the plaintiff and its agent. There was no failure to procure a policy in this case. Defendant has no obligation to ensure the plaintiff purchased sufficient coverage. This is plaintiff's duty alone. Furthermore, the entirety of Harleysville's actions fall under federal law, not

state law. If these cases were tried together, there would be no overlap between the activities of the agent that are being alleged as negligent, and the activities of the company that are alleged to be negligent. These are two distinct and separate causes of action and would be tried under two entirely different legal standards and legal systems.

Moving to the *Carl Heck* test, Harleysville submits that it is now established that a policy administration case is removable to the federal courts. This is established by the decisions in *Newman, Breakthrough Reality*, and *McCulloch,* as cited in *Newman*. Simply put, had the plaintiff not sued his own insurance agent (44 C.F.R. § 61.5(e)) at all, and rather, sued only FEMA's fiscal agent and fiduciary (44 C.F.R. § 62.23(f)), this case would have been removable under 42 U.S.C. §4072 (exclusive jurisdiction). It is indeed a case that would have been subject to the original jurisdiction of the United States Courts had it been filed in federal court in the first place by the plaintiff.

The final test, that of *Henry,* is also satisfied. This case involves two distinct actions. The first being the procurement of the policy. Procurement of the policy was successfully effected. The plaintiff does not dispute this. The policy was procured strictly on the information provided by the plaintiff and the agent, Capital City. Harleysville has no duty whatsoever under federal law to take pro-active measures to ensure that the coverage requested is sufficient to avoid any penalties under the policy. Harleysville's responsibility is strictly to put the policy into place.

The second action is the administration of the policy, or all activities that occur once the policy is successfully procured. While the plaintiff has not couched his complaint in terms of administration, the operative facts sound in administration. Once the policy is successfully procured, the only remaining causes of action against the WYO carrier are those based in administration and/or founded

in policy interpretation of coverage, i.e. those seeking to void the co-insurance penalty found in Article VII (A)(1). The plaintiff is, in reality, asserting that Harleysville failed to evaluate the policy and determine that the policy was subject to a co-insurance penalty, and is demanding this penalty not apply to this matter. This is a distinct and separate cause of action that only concerns Harleysville.

The agent's potential liability is reserved specifically for the initial procurement of the policy and any alleged misrepresentations that may have been made at that point. State law controls that process. Harleysville cannot make any misrepresentations during procurement, as they do not communicate directly with the insured. Only the agent communicates with and acts for the insured.

Once the policy is successfully procured, the WYO's potential liability only can stem from the administration of that policy or the claims process. Therefore, the cause of action against Harleysville is distinct from that against the agent, Capital City. This policy was successfully procured for the amount of coverage requested by the plaintiff. Harleysville completed its duty to procure the policy as requested. Therefore, the only grounds for liability that the plaintiff could assert would be for actions post-procurement. These actions fall into the realm of policy administration and call for this Court to interpret the SFIP. For these reasons, the plaintiff's motion for remand should be denied.

## CONCLUSION

Harleysville respectfully recognizes the line of cases that squarely holds that an agent can be held liable under state law in the context of NFIP policy procurement disputes, and that a case of that type may properly be litigated in the state courts. However, that series of holdings does not answer the question presented here. In this matter, this plaintiff did not just sue its own insurance agent, but has also sought recovery from the WYO carrier, Harleysville. Clearly, this case presents a federal

question and should be restricted to the courts of the United States. The Court is also asked to carefully examine the above cited jurisprudence and to thereafter see that federal funds are plainly at stake in this proceeding, and that the claims against Harleysville are separate and independent of the claims against the agent.

WHEREFORE, Harleysville prays that this Honorable Court will deny the plaintiff's motion to remand.

DEFENDANT, HARLEYSVILLE
WORCESTER INSURANCE COMPANY,
By its Attorney,

/s/ Holly R. Rao, Esq.
Holly R. Rao, Esq. #3539
OLENN & PENZA, LLP
530 Greenwich Avenue
Warwick, RI 02886
PHONE: (401) 737-3700
FAX: (401) 737-5499

## CERTIFICATION

I certify that I sent a true copy of the within on November 30, 2007, to:

Thomas J. Marks, Esq.
Decof & Decof, P.C.
One Smith Hill
Providence, RI 02903

Geoffrey W. Millsom, Esq.
ADLER, POLLACK & SHEEHAN
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

/s/ Holly R. Rao, Esq.