O&P
OLENN & PENZA
ATTORNEYS AT LAW - LLP

January 22, 2008

The Honorable Mary M. Lisi
Judge of the United States District Court
For the District of Rhode Island
One Exchange Terrace
Providence, RI 02903-1779

Re: Riverfront Lofts Condominium Association vs.
Harleysville Worcester Insurance Company, et al
C.A. No. 07-395 ML-DLM
Our File No. 7125/2

Dear Judge Lisi:

In accordance with your order after the hearing on Plaintiff's Motion to Remand defendant offers the attached list of cases and further explanation of the jurisdictional issues raised. The explanation is necessary as the issue of what falls outside of the Arrangement between FEMA and the WYO carriers has not been exposed to extensive litigation. These are internal matters between FEMA and its fiduciaries and as such, are rarely before the courts. Courts have discussed these matters on rare occasions but have not ruled specifically as to what falls outside of the scope. The primary reason being that these issues do not reach the courts for review, they are strictly internal concerns and for a court to rule that conduct fell outside the scope of the Arrangement would be a violation of the separation of powers doctrine. See *Moffett v. Computer Sciences Corp., et al.* 457 F.Supp.2d 571 (D Md.). This ruling was handed down after two days of oral argument of such issues before the court. Furthermore, these issues are not justiciable and a plaintiff in a suit to recover U.S. treasury funds under a Standard Flood Insurance Policy is not the proper party to raise these issues. A plaintiff is not a third party beneficiary of the Arrangement. As such, there is a limited body of case law to draw upon.

Defendant also wishes to make one point imperative above all. FEMA is absolutely going to pay all litigation defense expenses incurred in this cause of action. Harleysville acted in accordance to its duties under the National Flood Insurance Program and issued a policy based on the information provided by the independent

insurance agent. There is a clear division of liability between the actions of the agent, and those of the WYO carrier. As per 44 C.F.R. § 61.5 (e) the agent acts for the insured. The WYO carrier acts for FEMA. This is clear in light of Congress's addition of 42 U.S.C. §4081(c) whereby the federal government "may not hold harmless or indemnify an agent or broker for his error or omission." The U.S. Fifth Circuit has opined that §4081(c ) "is plainly limited to claims against agents and brokers, as distinct from WYOs." *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 388 (5th Cir. 2005). This precludes any argument that Harleysville's acts do not implicate federal funds. Furthermore, based on Harleysville's status as the fiscal agent of the United States in the selling and marketing of flood insurance policies federal law completely controls this Defendant's actions. Nowhere in the National Flood Insurance Program, the NFIA at 42 U.S.C. §4001 *et seq.*, Title 44 of the Code of Federal Regulations, or federal common law is there a duty on the part of a WYO carrier to advise an insured to seek additional coverage, to inform an insured of potential penalties for being under-insured, or of the limits mandated and capped by 44 C.F.R. §61.6. All persons are charged with knowledge of these published regulations and a detrimental reliance claim simply fails. See *Richmond Printing L.L.C. v. Director, FEMA*, 2003 WL 21697457 (5th Cir. July 21, 2003).

Furthermore, a remand to state court in this matter will allow a state court to decide issues that are strictly reserved for federal courts and will be counterproductive to the program, jeopardizing the uniform rule of law as established by *West v. Harris,* 573 F.2d 873 (5th Cir. 1978), *cert. denied*, 99 S.Ct. 1424 (1979). No matter how the Plaintiff couches its claims, all the claims have one common factor that confers subject matter jurisdiction to this Court, they all seek U.S. treasury funds. Whether the claims are labeled negligence, estoppel, policy procurement or are brought under Rhode Island agency laws is immaterial. If any claim is paid in this case by Harleysville, it will be paid by the U.S. treasury. The Court must keep this in mind. U.S. treasury funds are at stake and this alone confers jurisdiction because such payments implicate the Appropriations Clause. The issue of what falls outside of the Arrangement is completely tangential and is an issue that, if relevant, would have no bearing on jurisdiction in this matter.

The Defendant wishes to direct the Court to *Moffett*, *supra* where an in-depth

analysis of "procurement" issues[1] was performed. The *Moffett* court was faced with a litany of issues, one of which was whether claims for alleged fraudulent and negligent procurement of SFIPs fell outside of the scope of the Arrangement and would thus would be subject to FEMA refusing to reimburse litigation expenses stemming from these types of cases. The court, through careful analysis, determined that procurement cases would not fall outside the scope of the Arrangement and would be subject to FEMA's reimbursement and thus implicate U.S. treasury funds. This ruling is from 2006 and was the first true post-*Spence* analysis of the Arrangement. As this case comprises a large portion of Defendant's authority on this particular issue, it will be cited at length.

On the issue of FEMA's intent when drafting the amended Arrangement, the court noted:

> FEMA, whose opinion on the matter is certainly entitled to deference, *see Geier v. Am. Honda Motor Co., Inc.*, (citation omitted); *Scherz v. South Carolina Ins. Co.* (citation omitted), has never agreed with Plaintiffs' interpretation of what is meant by 'significantly outside the scope of the Arrangement' or 'agent negligence.' FEMA expressly disagreed with the interpretation of the regulations given by *Spence*, and promptly amended its regulations to make clear what its position pre-*Spence* had always been–that state law fraud claims based on policy procurement were not 'outside the scope of the Arrangement.' FEMA's position then and now is that the most that these regulations do is to '***protect FEMA from responsibility for egregious conduct totally outside of the Arrangement, such as an assault by an employee of the WYO company on an insured party.***'...They do not, however, except procurement fraud...(emphasis added).

[1] Harleysville asserts that this matter involves claims handling and administration, not strict procurement. However, Harleysville recognizes that the Court considers some of this case to be founded in procurement and would like to address that issue specifically.

*Id.* at 587.

The Court further clarified this issue by holding firmly that procurement cases implicate U.S. treasury funds no matter how they are presented. The court ruled:

> …the Court is persuaded that federal funds may very well be at stake in connection with procurement fraud claims, however much Plaintiffs may argue they are not. Insofar as it is for FEMA's General Counsel in given cases 'to recommend' what is outside the scope of the Arrangement, and–so as not to discourage WYO's from participating in the program–he chooses not to, federal funds are surely implicated. And while FEMA may well decline to indemnify WYO's for certain errors, omissions, or negligence, where, as here, WYO's are sued for both procurement fraud and claims handling fraud (or procurement fraud alone), FEMA would still presumably have a duty to defend such claims until such time as they are proven, since the claims might in fact prove to be totally groundless. This would involve federal funds.[2]

*Id.*

The 5th Circuit also addressed this issue in the matter of *Wright*, 415 F.3d 384 (5th Cir. 2005). The Plaintiff had asserted that his claims (some of which were based on negligence, fraud, misrepresentation and founded on Texas state law, much like the Plaintiff's in the instant case) were not claims subject to U.S. treasury funds. The court held:

> Wright's argument that his breach of contract suit does not implicate federal funds because FEMA may, in some cases, choose not to reimburse a WYO is similarly unavailing. FEMA regulations permit FEMA to decline to recognize as

---

[2]This is an identical situation to the one at hand as the claims against Harleysville are groundless and impossible of success under the doctrines of *Merrill*, *Heckler* and *Richmond Printing*.

> a reimbursable loss cost claims grounded in actions by the WYO which FEMA determines are 'significantly outside the scope of this Agreement.' 44 C.F.R. Pt. 62, App. A. Art. III(D)(4). Wright has provided no more than a conclusory assertion that this provision renders his claim something other than a claim for federal funds. Moreover, courts have consistently held that claims on SFIPs issued by WYOs are actions for federal funds. *Gibson v. Am. Bankers,* 289 F.3d 943, 946 (6th Cir.2002); *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 166 (3rd Cir. 1998); *Gowland,* 143 F.3d at 955.

*Id.* at 388-389.

Again, Defendant would like to assert its position that the Plaintiff is *making a claim* under this policy. It requests from this Court an order "(1) For the full amount of monetary damages."As such, Plaintiff is asking this Court to interpret the policy and pay it the remainder of the claim. Therefore, U.S. treasury funds are at stake and a federal question is presented. There is <u>no vehicle</u> available to the Plaintiff for obtaining these funds other than an interpretation of the policy. All state law based extra-contractual claims are barred and preempted by *Wright*. No money remedies are available outside of the policy itself. This is settled law and has been uniformly applied by every circuit in the nation.[3] Therefore, there is no possibility of interpreting these claims as anything but claims under the policy. The Plaintiff is either making a claim under the policy, or making no claim at all.

Addressing the issue of estoppel[4] in the context of the co-insurance penalty the

---

[3]Defendant attaches a "preemption" list which cites the vast majority of courts that have ruled in line with the holding in *Wright.*

[4]Defendant has been informed by the Plaintiff that a motion to amend the Plaintiff's complaint to remove this allegation in an effort to destroy subject matter jurisdiction will be filed. While Defendant will object to such amendment, and asserts that the estoppel claim is <u>not</u> essential for subject matter jurisdiction, Defendant wishes to address this allegation. Furthermore, the doctrine of equitable estoppel is barred and preempted by *Wright*. No court since *Office of Personnel Management v. Richmond*. 496 U.S. 414(1990) has held that an estoppel argument can result in a payment of U.S.

Defendant first points to the language of the Plaintiff's complaint. To wit, Paragraph 24 of the Plaintiff's complaint states:

> Injustice can only be avoided by enforcing the Defendant's promise that the $500,000 coverage was wholly adequate coverage.

The Plaintiff is seeking an order from the Court vitiating the co-insurance penalty, a condition of the policy. The estoppel argument on its face is a claims handling argument. The Court's determination will impact how much money is disbursed to the Plaintiff under their claim for U.S. treasury funds. If the co-insurance penalty is deemed inapplicable, the Plaintiff could potentially receive the full monetary value of its claim. While Defendant strenuously asserts that this claim has no merit, and is in fact, preempted, this claim defacto calls for an interpretation of the policy. The Fourth Circuit in *Battle v. Seibels Bruce Ins. Co.*, 288 F.3d 596 (4th Cir. 2002) held that "the law is well settled that federal common law *alone* governs the interpretation of insurance policies issued pursuant to the NFIP." *Id.* at 607.

Furthermore, the Plaintiff's additional claims that sound in tort, those of negligence and negligent misrepresentation, while preempted, also confer jurisdiction to this Court because they again relate directly to the handling of this claim. The Plaintiff wishes to mislead this Court by asserting that this claim is for nothing more than a failure to procure sufficient coverage. However, what the Plaintiff fails to grasp is that no cause of action exists against a WYO carrier for such a claim. That is strictly a cause of action that must be brought against an agent. As such, if the Plaintiff wishes to retain Harleysville as a defendant in this lawsuit, the Plaintiff must ask this Court to vitiate the decision to enforce the co-insurance penalty which was applied during the claims handling phase of this lawsuit. The operative fact that spawned this lawsuit was not the Plaintiff's failure to procure sufficient coverage, but Harleysville's enforcement of the policy and refusal to pay the full extent of the claim. If Harleysville had paid the full claim, would this suit have been filed?

It is well settled law that claims based in tort and not labeled in pure breach of contract terms, still confer exclusive jurisdiction to the district court. This can be traced

treasury funds in an NFIP case.

all the way back to *Van Holt*. The Third Circuit ruled:

> Although the Van Holt's suit does not explicitly allege that Liberty Mutual violated the insurance policy contract, their lawsuit should be deemed an action subject to the act. The statutory and regulatory scheme reveals that Congress would have intended to give the district court original exclusive jurisdiction had Congress considered the issue. Most importantly, federal funds are at stake in this suit…Although the Van Holt's claims sound in tort, their causes of action alleging impropriety in the investigation and adjustment of their insurance claim are intimately related to the disallowance of their insurance claim…We now determine that Congress, had it considered the specific question, would have intended to confer original exclusive jurisdiction on the district court over claims sounding in tort arising out of the investigation or adjustment of insurance policies arising out of the administration and sale of insurance under the NFIA. We reach this conclusion because Liberty Mutual is a fiscal agent of the United States, FEMA would have borne the costs of the plaintiff's insurance claim, and FEMA is obliged to reimburse Liberty Mutual for defense costs.

*Id.* at 167.

As a matter of fact, it was holdings such as *Van Holt*, with its speculative ruling regarding jurisdiction that led Congress to clarify this issue and revise the Arrangement in 2004, adding the following language:

> Whereas, FIA has promulgated regulations and guidance implementing the Act and the Write-Your-Own Program whereby participating private insurance companies act in a fiduciary capacity utilizing federal funds to sell and administer the Standard Flood Insurance Policies, and has extensively regulated the participating companies' activities when selling or administering the Standard Flood Insurance

> Policies; and
>
> Whereas any litigation resulting from, related to, or arising from the companies compliance with the written standards, procedures, and guidance issued by FEMA or FIA arises under the Act, regulations, or FIA guidance, and legal issues thereunder raise a federal question…

The Defendant apologizes for the length of this letter. Defendant also acknowledges that there is an extremely limited body of case law regarding some of these issues. The reason for such being that some of these issues are not justiciable and also because issues such as interpretation of the 2004 amendment to the Arrangement simply have not transpired beyond limited cases. However, Defendant wants to make one point abundantly clear and that is the importance of federal jurisdiction in this matter. It is essential under the dictates of *West* that a uniform body of case law be maintained under the NFIP. Allowing these crucial policy issues to be interpreted by a state court would run counter to that mandate. For these reasons, the Defendant requests that the Plaintiff's motion for remand be denied.

Respectfully submitted,

Holly R. Rao, Esq. (#3539)
Attorney for Defendant,
Harleysville Worcester Insurance Company

HRR:mes \letters\71252 RemandAuthorities.wpd
Enclosure

cc: Geoffrey W. Millsom, Esq.
John J. McConnell, Jr., Esq.